AUSA: Justin L. Brooke

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JAMES NEFF,

Defendant.

24 mj 1747

**COMPLAINT**

Violation of 18 U.S.C. § 922(g)

COUNTY OF OFFENSE:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

BRANDON AMLUNG, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Possession of a Firearm and Ammunition After a Felony Conviction)

1. From at least on or about November 2023 to on or about May 1, 2024, in the Southern District of New York and elsewhere, JAMES NEFF, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed firearms, to wit, a .40 Smith & Wesson Sig Sauer P226 pistol, a .32 Smith & Wesson Long caliber Harrington & Richardson Model 732 revolver, a 5.56mm Olympic Arms P.C.R. 99 rifle, and ammunition, to wit, cartridges of .40 Smith & Wesson Federal, 9mm Luger PMC, and Luger 9mm CBC, and the firearms and ammunition were in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Task Force Officer with the Federal Bureau of Investigation's ("FBI's") Safe Streets Task Force, and I am also a Sergeant with Westchester County Department of Public Safety ("WCPD'). I have been employed by the WCPD since 2013. I was previously a Police Officer with the New York City Police Department from 2010 until 2011 and with the Rye City Police Department from 2011 until 2013. I have been involved, among other things, in numerous firearms-related investigations, arrests, and search warrants throughout my law enforcement career, and I have received training in investigations and enforcement of these laws, including relating to the interviewing, interrogation, sale, possession, and distribution of firearms. I have been personally involved in the investigation of this matter.

3. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement agents, and my examination of reports and records, including video surveillance footage. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned

during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based upon my participation in this investigation, my review of video surveillance, my review of related law enforcement reports and records, and my conversations with other members of law enforcement, including from the Federal Bureau of Investigation and the Westchester County Department of Public Safety, I have learned the following:

a. On or about May 1, 2024, I and other members of law enforcement executed multiple search warrants on premises known to be used or possessed by JAMES NEFF, the defendant, including his residence in Dobbs Ferry, New York (the "Dobbs Ferry Residence"), and his storage units in Mount Vernon, New York (the "Mount Vernon Storage Unit"), and East Stroudsburg, Pennsylvania (the "East Stroudsburg Storage Unit"). NEFF is known to reside at the Dobbs Ferry residence, which is listed as his residence in various public and law enforcement databases. I have reviewed records provided by each storage unit company, which indicate that NEFF is the lessor on both his Mount Vernon Storage Unit and East Stroudsburg Storage Unit. In addition, members of law enforcement have observed NEFF entering and exiting each storage unit and have reviewed surveillance video from the East Stroudsburg Storage Unit depicting NEFF entering and exiting that storage unit on multiple occasions, including from around early November 2023, when video from the East Stroudsburg Storage Unit depicts NEFF loading a large quantity of wooden boxes, cardboard boxes, and other items, including visible firearms, into the East Stroudsburg Storage Unit.

b. After executing search warrants on the Mount Vernon Storage Unit and the Dobbs Ferry Residence, members of law enforcement found, among other things, approximately 100 live rounds of .40 Smith & Wesson Federal cartridges at the Mount Vernon Storage Unit and approximately one 9mm Luger PMC cartridge and one 9mm Luger CBC cartridge at the Dobbs Ferry Residence.

c. After executing a search warrant on the East Stroudsburg Storage Unit, members of law enforcement found approximately 31 firearms, including at least some that appear personally manufactured, as opposed to commercially manufactured. Members of law enforcement also found numerous rounds of ammunition. Among the firearms found in the East Stroudsburg Storage Unit are a .40 Smith & Wesson Sig Sauer P226 pistol, a .32 Smith & Wesson Long caliber Harrington & Richardson Model 732 revolver, a 5.56mm Olympic Arms P.C.R. 99 rifle, along with various other assault-rifle style firearms, including what appears to be at least one Uzi. Many of these firearms and rounds of ammunition were found in wooden or cardboard boxes. Some of the firearms found are depicted in the two photographs below.

*[Continued on next page]*





    d.    In the East Stroudsburg Storage Unit, members of law enforcement also found, among other things, multiple books on how to make homemade or improvised explosives, including books entitled "The Anarchist Arsenal, Improvised Incendiary and Explosives Techniques," "How to Bury Your Goods," "Home Explosives Workshop," "Ragnar's Guide to

3

Home and Recreational Use of High Explosives," and multiple volumes of the "Improvised Munitions Black Book." In addition, members of law enforcement also found suspected precursors to explosives, suspected low explosives or smokeless powders, and other items consistent with the preparation of homemade explosive devices, including what appears to be fuse that can be used to initiate a low explosive, cardboard containers with endcaps, a pipe with two endcaps, and grenade bodies, items which could be used to create readily assembled explosive devices. Certain of these items are depicted in the photograph below.



e.     On or about May 1, 2024, members of law enforcement conducted a stop of JAMES NEFF, the defendant, and detained him. After being *Mirandized*, NEFF admitted in interviews with members of law enforcement that the Dobbs Ferry Residence, Mount Vernon Storage Unit, and East Stroudsburg Storage Unit belong to or are rented by him and that firearms, ammunition, and explosives-related chemicals in the East Stroudsburg Storage Unit, the Mount Vernon Storage Unit, and the Dobbs Ferry Residence are his. NEFF also admitted that this past winter, he personally transported the firearms, ammunition, and suspected explosives-related chemicals found in the East Stroudsburg Storage Unit from the Dobbs Ferry Residence and Mount Vernon Storage Unit in New York to the East Stroudsburg Storage Unit. NEFF also indicated that he currently travels to the East Stroudsburg Storage Unit roughly once a week, and has purchased additional explosives-related chemicals on those trips.

5.     Based upon my training, experience, and expertise, and based upon my conversations with other members of law enforcement investigating this matter, including members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I have concluded that at least the .40 Smith & Wesson Sig Sauer P226 pistol, a .32 Smith & Wesson Long caliber Harrington & Richardson Model 732 revolver, a 5.56mm Olympic Arms P.C.R. 99 rifle, and the

4

ammunition cartridges of .40 Smith & Wesson Federal, 9mm Luger PMC, and Luger 9mm CBC recovered from JAMES NEFF, the defendant, were manufactured outside of New York State.

6. I have reviewed criminal history records pertaining to the defendant, JAMES NEFF, that show that on or about December 20, 2001, NEFF was convicted of criminal possession of a dangerous weapon in the first degree, a Class B felony punishable by more than one year's imprisonment, for which he was sentenced to five years' imprisonment. In connection with that charge, and based upon my review of law enforcement reports and records, members of law enforcement conducted a search of the Dobbs Ferry Residence, and found more than 130 firearms; rounds of armor-piercing ammunition; materials that appeared consistent with the construction of a silencer; more than 120 pounds of smokeless and black powders, which are used to make improvised explosive devices; approximately six to eight threaded pipes with end caps, surplus hand grenades that were sealed at the bottom such that, if explosive powders were added, they each would become an improvised explosive device ("IED"); along with fuse and rocket engines, items which are commonly used in the detonation of IEDs.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of JAMES NEFF, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

BRANDON AMLUNG
Task Force Officer
Federal Bureau of Investigation

Sworn to before me this 2nd day of May, 2024.

THE HONORABLE JUDITH C. McCARTHY
United States Magistrate Judge
Southern District of New York

5