

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

October 14, 2025

**VIA ECF AND EMAIL**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, N.Y. 10601

      Re:     *United States v. James Neff,* **No. 25 Cr. 271 (CS)**
               **SENTENCING MEMORANDUM**

Dear Judge Seibel:

      The Government respectfully submits this letter in advance of the sentencing of the defendant, James Neff, scheduled for October 21, 2025. Neff pleaded guilty to possession of firearms and ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1), in connection with his possession, from at least November 2023 to on or about May 1, 2024, of 32 firearms, including numerous pistols, rifles, shotguns, privately-made firearms, a readily-assembled pipe bomb, and numerous rounds of ammunition. For the reasons discussed below, and in consideration of the factors set out in 18 U.S.C. § 3553(a), the Government respectfully submits that a sentence at the lower end of the Guidelines range of 70–87 months of imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.    Background**

      **A.    Offense Conduct**

      This case arises from the defendant's illegal possession of an arsenal of firearms and ammunition, along with explosives and materials that could be used to make bombs and explosives, from at least November 2023 to on or about May 1, 2024.

      On May 1, 2024, members of law enforcement conducted judicially-authorized searches of the defendant's residence in Dobbs Ferry, New York, his storage unit in Mount Vernon, New York, and his storage unit in East Stroudsburg, Pennsylvania. Law enforcement officers found ammunition in his Dobbs Ferry residence and his Mount Vernon storage unit. In the East Stroudsburg storage unit, law enforcement officers found numerous pistols, rifles, shotguns, and privately-made firearms, including multiple Glock-style pistols, an UZI-style rifle, a Mac-11-style

pistol, and AR-15-style and semiautomatic rifles, along with numerous—hundreds, if not more—rounds of ammunition. *See* PSR ¶¶ 5–12.

Law enforcement officers also found a readily-assembled pipe bomb along with substantial quantities of explosives and bomb-making related materials and chemicals. The readily-assembled pipe bomb consisted of a pipe with end caps, with a hole drilled into the cap or pipe in order to create a fusing/initiation system, along with fuse and multiple explosive powders, low explosives and black powder substitutes that could be used as explosive material, and at quantities higher than normal use, along with a box of screws, which would further enable the weaponization of these various components. The East Stroudsburg storage unit also contained numerous books relating to building homemade or improvised explosives, including "The Anarchist Arsenal, Improved Incendiary and Explosives Techniques," "How to Bury Your Goods," "Home Explosives Workshop," "Ragnar's Guide to Home and Recreational Use of High Explosives," and multiple volumes of the "Improvised Munitions Black Book." PSR ¶¶ 9–12.

In connection with these searches, the defendant was arrested and interviewed, and, after being *Mirandized*, he admitted that the firearms, ammunition, and explosive-related chemicals in his residence and storage units belonged to him, and that he had personally transported the firearms, ammunition, and explosives found in the East Stroudsburg storage unit from Westchester during the winter of 2023–2024. PSR ¶ 12.

### B. Procedural Background

On May 1, 2024, the defendant was arrested, and on May 2, he was charged by criminal complaint and had his initial appearance before Judge McCarthy. Following a hearing, he was ordered detained on grounds of dangerousness to the community and risk of flight. Dkts. 1–2. On June 12, 2025, the defendant waived indictment and, pursuant to a plea agreement executed that same day (the "Plea Agreement"), pleaded guilty before Your Honor to a one-count Information charging the same offense charged in the complaint and specifying forfeiture of the defendant's firearms and ammunition. Dkts. 26–29. On August 3, the draft presentence report was disclosed, Dkt. 30, and on September 10, the final presentence report was disclosed, Dkt. 33. On October 7, the defendant filed his sentencing submission. Dkt. 34 (the "Defendant's Submission").

### C. Applicable Guidelines Range

The sentencing guidelines range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") stipulated to by the parties in the Plea Agreement provides for an offense level of 26 and three criminal history points (criminal history category II), resulting in a Guidelines range of 70–87 months of imprisonment. Probation agrees with this Guidelines range. PSR ¶¶ 16–33; PSR at 20.

Probation recommends a sentence of 70 months, the low end of the Guidelines range.[1] PSR at 20–21. The defendant requests a below-Guidelines sentence of 42 months of

---

[1] Probation also recommends that the Court impose a $5,000 fine, although the Guidelines fine range is $25,000–$250,000. PSR at 20–21. As the defendant does appear to have the ability to

imprisonment.  Defendant's Submission at 5, 9.  The Government submits that a sentence at the lower end of the 70–87-month Guidelines range is appropriate in this case.

**II.     Discussion**

    **A.     Applicable Law**

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions."  *Gall v. United States*, 552 U.S. 38, 46 (2007).  It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49.  Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set out below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)–(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

---

pay a fine, *see* PSR ¶¶ 61–64, the Government agrees with Probation's recommendation of a $5,000 fine.

### B. The Court Should Impose a Sentence at the Lower End of the Guidelines Range

The Government respectfully submits that a sentence at the lower end of the 70–87 month Guidelines range is the appropriate sentence in this case. Such a sentence would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing, in light of the § 3553(a) factors. In particular, such a sentence appropriately reflects the seriousness of the defendant's conduct and the defendant's history and characteristics, promotes respect for the law, and affords both general and specific deterrence.

*First*, a sentence at the lower end of the 70–87-month Guidelines range is appropriate to address the nature and circumstances of the offense, the need to reflect the seriousness of the offense, and the need to protect the public. The defendant is a convicted felon barred from firearms possession. Nonetheless, he accumulated an arsenal. He possessed 32 firearms, including rifles, pistols, and shotguns, along with multiple privately-made firearms he partially made or machined from kits. He had revolvers, semiautomatic weapons, shotguns, and AR-15-style and semiautomatic rifles, from an UZI-style rifle to a partially-privately-made Mac-11. He had at least hundreds of rounds of ammunition. And he had a readily assembled-pipe bomb with a box of screws to fill it with. This bomb was readily-assembled, and could have been easily made from the numerous explosive chemicals and bomb-making components, including fuse, multiple pounds of explosive powder and black powder substitutes, at quantities greater than normal use, and explosive containers—including a pipe with a hole for fuse and end caps—and the box of screws, which appeared to have no purpose other than weaponization.[2]

It was not permissible for the defendant to build and possess this arsenal. The defendant is prohibited from possessing guns and ammunition. The defendant claims that he never intended to use these weapons and explosives in a dangerous way or with a desire to hurt anyone.[3] Defendant's Submission at 6. The Government does not possess evidence that he harmed anyone, and the Government agrees this is mitigating and weighs towards a sentence at the lower end of— but not below—the Guidelines range. Instead, the defendant's numerous guns, which include privately-made firearms, and his explosive and bomb-making materials, could wreak tremendous harm. The citizens of this District should not have to be concerned that their neighbor, prohibited from possessing firearms, has instead amassed an arsenal that could someday be unleashed. Nor should they have to worry that an amateur next door is building improvised explosives—pipe

---

[2] There were no other tools or construction materials found in the storage unit with these explosives, pipes, and bomb making components. Instead, the box of screws was found among bomb-making components and books about bomb-making. The screws could have easily enabled the construction and weaponization of a pipe bomb filled with screws.

[3] The Defendant's Submission, and its exhibits attached in support, instead notes that the defendant has an obsession with guns and hoarding tendencies. Defendant's Submission at 6. The defendant also claimed that his plan was to have property where he could fire weapons and "blow up stuff" and post videos of this on YouTube. Defendant's Submission, Ex. E at 7.

bombs to be filled with nails—for fun.[4] The defendant had no excuse for breaking the law other than his interest in guns. This weighs against a downward variance from the Guidelines range. Instead, the need to promote respect for the law and provide just punishment for the defendant's disregard and defiance of it weighs in favor of a sentence within the Guidelines range.

*Second*, a sentence of at the low end of the Guidelines range would reflect the history and characteristics of the defendant, promote respect for the law, provide just punishment, and promote deterrence. Notably, some 25 years ago, in 2000, the defendant was arrested and later convicted of a nearly identical crime. In that case, law enforcement officers executed a search warrant on the defendant's Dobbs Ferry residence and found an even larger stockpile of weapons and explosives. In that search, officers found more than 130 firearms; armor piercing ammunition; materials that appeared consistent with the construction of a silencer; more than 120 pounds of smokeless and black powders, which can be used to make improvised explosive devices; approximately six to eight threaded pipes with end caps and surplus hand grenades sealed at the bottom that could become improvised explosive devices; and fuse and rocket engines. The defendant ultimately pleaded guilty to criminal possession of a dangerous weapon in the first degree, in violation of New York Penal Law ("NYPL") § 265.04, a Class B felony, and of criminal possession of a weapon in the third degree, in violation of NYPL § 265.02(05), a Class D felony, and ultimately received a sentence of five years of imprisonment.[5]

Unfortunately, the defendant returned to the same illegal firearms possession he was convicted of and sentenced for roughly 25 years ago. The Government acknowledges that the defendant has accepted responsibility, appears motivated to receive treatment and divert his attention from firearms, and is 63 years old. *See* Defendant's Submission at 7–9 and Exhibit B (James Neff Letter). But, that the defendant was undeterred by his prior five-year sentence reinforces the appropriateness of a longer sentence in this case. A longer sentence is accordingly necessary to deter the defendant, and to deter others who engage in repeat criminal conduct. Such a sentence is necessary to show that reverting to the same criminal conduct will be met with appropriate punishment.

---

[4] Exhibit E to the Defendant's Submission indicates that the defendant would consume three to four drinks each evening, Defendant's Submission, Ex. E at 6, and the PSR indicates that the defendant completed a drunk driving-related program in 1999, PSR ¶ 55. Although the defendant does not appear to have a drug abuse problem, the defendant's alcohol consumption, coupled with his access to firearms, is troubling.

[5] At the time of the defendant's conviction, the crime of criminal possession of a dangerous weapon in the first degree, in violation of NYPL § 265.04, criminalized "possess[ing] any explosive substance with intent to use the same unlawfully against the person or property of another." Criminal possession of a weapon in the third degree, in violation of NYPL § 265.02(05), criminalized "possess[ing] twenty or more firearms." *See* McKinney's 2005 Session Law News of New York, Chapter 764, Firearms—Possession—Sales.

## Conclusion

  For the reasons set out above, the Government respectfully requests that the Court impose a sentence at the lower end of the Guidelines range of 70–87 months of imprisonment, along with a three-year term of supervised release.

            Respectfully submitted,

            JAY CLAYTON
            United States Attorney

         by: _____
            Justin L. Brooke
            Assistant United States Attorney
            (914) 993-1918

CC: Benjamin D. Gold, Esq. (via email)
    Deanna Paige, U.S.P.O. (via email)